UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------------x
STEVEN GOLDSTEIN                                  :
                                                  :
                        Plaintiff,                :
                                                  :         10 Civ. 2488 (HB)
        - against -                               :
                                                  :         OPINION &
                                                  :         ORDER
QVT ASSOCIATES GP LLC, QVT OVERSEAS LTD.,         :
QUINTESSENCE FUND, L.P., QVT ASSOCIATES,          :
L.P., QVT GLOBAL II L.P., and MEDIVATION, INC.    :
                                                  :
                                                  :
                        Defendants.               :
                                                  :
------------------------------------------------------------------------------x

**Hon. Harold Baer, Jr., U.S.D.J.:**

Plaintiff Steven Goldstein, an alleged shareholder of nominal defendant Medivation, Inc. ("Medivation"), brings this action pursuant to Section 16(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78b(p), in order to recover short-swing insider trading profits allegedly realized by defendants QVT Associates, LLC, QVT Overseas Ltd., Quintessence Fund, L.P., QVT Associates, L.P., and QVT Global II L.P. (collectively, the "QVT Defendants"). The Complaint alleges that the QVT Defendants as a "group," within the meaning of the Exchange Act, owned more than 10 percent of Medivation's outstanding stock, that within a period of less than six months, the QVT Defendants purchased and sold Medivation stock at a profit, and that section 16(b) requires the disgorgement of that profit to Medivation, a public company that trades on NASDAQ.

On May 20, 2010, the QVT Defendants moved to dismiss the Complaint, and on June 9, 2010, the Court heard oral argument on the motion. The critical questions at this

1

stage in the litigation are (1) whether Plaintiff has met the demand requirement as set forth in Section 16(b) of the Exchange Act and (2) whether Plaintiff has plausibly pleaded the existence of a section 16 "group" among the QVT Defendants. For the reasons that follow, the Court concludes that Plaintiff has overcome that burden. Accordingly, the motion to dismiss must be denied.

## I.   FACTUAL BACKGROUND

There are five interrelated QVT entities named as defendants in this action. Quintessence Fund L.P., QVT Associates LP, and QVT Global II L.P. are U.S.-based limited partnership investment funds that allegedly owned Medivation common stock (hereinafter, the "U.S. Funds"). Complt. ¶¶ 5-6. Defendant QVT Associates GP LLC is the general partner of the U.S. Funds, and allegedly held a pecuniary interest in the securities they owned. *Id.* at ¶ 7. Defendant QVT Overseas Ltd. is a Cayman Islands-based fund with distinct investors. *Id.* at ¶ 8. The Complaint alleges that nonparty QVT Financial LP directed the vote and disposition of Medivation common stock for the U.S. Funds and the Cayman Islands Fund (together, the "Advised Funds"). Plaintiff alleges that all the QVT entities are related, with QVT Financial LP in control of voting and investment decisions for all four of the Advised Funds.

The Complaint alleges that as of January 23, 2008, the QVT Defendants collectively owned over 10% of the outstanding common stock of Medivation. In a Schedule 13G/A filed with the SEC on that date, the QVT entities stated that QVT Overseas beneficially owned 1,455,275 shares of common stock, and the U.S. Funds beneficially owned an aggregate amount of 1,571,288 shares. Complt ¶ 13; Fruchter Decl., Ex. A. at 2. This

comprised 5.05 percent and 5.45 percent, respectively, of Medivation's outstanding common stock, for a total of 10.50 percent.  *See* Oral Argument, Def.'s Ex. A.

At the end of 2008, the QVT entities filed another Schedule 13G/A that provided details about the QVT entities' beneficial ownership.  Complt. ¶ 14.  As of December 31, 2008, QVT Overseas owned 2,155,391 shares of common stock, and the U.S. Funds beneficially owned an aggregate of 2,261,712 shares.  This comprised 7.17 percent and 7.52 percent, respectively, of Medivation's outstanding common stock, for a total of 14.69 percent.  *See* Oral Argument, Def's Ex. A.  A year later, at the end of 2009, Medivation filed a Schedule 13G/A, in which QVT Overseas is listed as the beneficial owner of 1,299,321 shares of common stock, and the U.S. funds are named as the beneficial owner of 2,451,930 shares.  *See* Fruchter Decl., Ex. C at 4.  This comprised 3.88 percent and 7.32 percent, respectively, of Medivation's outstanding common stock, for a total of 11.2 percent.  *See* Def.'s Ex. A, Oral Arg. of Jun. 9, 2010.  All three Schedules filed with the SEC state explicitly that "QVT Financial has the power to direct the vote and disposition of the Common Stock held by QVT Overseas Ltd. [and] each of the [U.S.] Funds."  *See* Fruchter Decl., Ex. A at 2; Ex. B at 4; Ex. C at 4.  With respect to the short-swing profits allegedly realized by the QVT Defendants as beneficial owners of Medivation stock, the Complaint alleges seven purchases or sales of Medivation stock by the QVT entities, on March 31, 2008, June 30, 2008, September 30, 2008, December 31, 2008, March 31, 2009, June 30, 2009 and September 30, 2009, meaning that there were several instances of a purchase-and-sale within six months, the statutory "short swing" period.

### III.  DISCUSSION

#### A.  Legal Standard

A complaint will be dismissed under Rule 12(b)(6) if there is a "failure to state a claim upon which relief can be granted." Fed.R.Civ.P.12(b)(6).  To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must "plead enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Landmen Partners Inc. v. Blackstone Group, L.P.*, 659 F.Supp.2d 532, 538 (S.D.N.Y. 2009).  A facially plausible claim is one where "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009).  Where the court finds well-pleaded factual allegations, it should assume their veracity and determine whether they "plausibly give rise to an entitlement to relief." *Id.* at 1950.

In addition to well-pleaded factual allegations in the complaint, a court "may consider any written instrument attached to the complaint, statements or documents incorporated into the complaint by reference, legally required public disclosure documents filed with the SEC, and documents possessed by or known to the plaintiff and upon which it relied in bringing the suit." *ATSI Commc'ns v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007); *In re Morgan Stanley Tech. Fund Secs. Litig.*, Nos. 02 Civ. 6153, 02 Civ. 8579 (BSJ), 2009 WL 256005 (S.D.N.Y. Feb. 2, 2009)(applying *ATSI* to Securities Act claims), *aff'd*, 592 F.3d 347 (2d Cir. 2010).

#### A.  Demand Requirement

Section 16(b) of the Exchange Act permits derivative actions by shareholders suing on behalf of an issuer.  The Act requires, however, that the plaintiff in a section 16(b)

action meet the demand requirement set forth by the statute, which provides, in relevant part, "Suit to recover such profit may be instituted…by the issuer, or by the owner of any security of the issuer in the name and on behalf of the issuer if the issuer shall fail or refuse to bring such suit within 60 days after request." 15 U.S.C. § 78p(b).

The QVT Defendants argue that the Complaint must be dismissed because Plaintiff has failed to meet the demand requirement as set forth in the statute. Specifically, Defendants contend that Plaintiff Goldstein lacks standing to sue, because a different shareholder, Mark Levy, made the demand upon Medivation on December 17, 2009. The statutory text, however, does not require that the plaintiff who ultimately initiates an action must be the same shareholder who demanded suit. The text itself specifies that a shareholder may initiate an action if the issuer fails "to bring such suit within 60 days *after request*." 15 U.S.C. § 78p(b). Furthermore, Congress intended to grant standing to a broad class of plaintiffs in Section 16(b) suits. "The statutory definitions identifying the class of plaintiffs (other than the issuer) who may bring suit indicate that Congress intended to grant enforcement standing of considerable breadth." *Gollust v. Mendell*, 501 U.S. 115, 122 (1991). The purpose of the demand requirement is to afford the issuer "a reasonable opportunity to assert and prosecute its claim in its own name for the recovery of profits from the insider." *Henss v. Fruehauf Trailer Corp., et al.*, 132 F.Supp. 60, 62 (S.D.N.Y. 1955) (Weinfeld, J.) (noting that corporation's failure to take action within sixty days means that the right to sue passes to the "security holders").

Here, demand for prosecution was made upon Medivation on December 17, 2009. Complt. ¶ 27. Counsel for the QVT Defendants allegedly responded by letter on February 4, 2010, asserting that "none of QVT's advised funds…directly or beneficially

owned more than 10% of the registered class of Medivation Stock during the Period. Therefore, the QVT funds are not subject to Section 16." The response from the QVT Defendants clearly indicates that Medivation received the shareholder demand, and communicated with the QVT Defendants as to their ownership of Medivation stock and potential liability. Medivation declined to sue, and this derivative action was properly initiated on March 18, 2010, more than 60 days after the demand. Thus, the Court declines to dismiss the Complaint on the grounds that Plaintiff has failed to meet the demand requirement.

The QVT Defendants assert that even if Levy's December 17, 2009 demand was timely, it was insufficient to support the Complaint insofar as it did not purport to cover transactions from October 1, 2008 to March 31, 2009, which the Complaint does. Given that we must take as true the facts alleged in the Complaint and draw all reasonable inferences in favor of the non-moving party, the demand must be presumed adequate as to all of Plaintiff's allegations. *See* Rescuecom Corp. v. Google Inc., 562 F.3d 123, 124-25 (2d Cir. 2009).

B.  **Section 16(b)**

Next is whether the defendants are entitled to a ruling that, as a matter of law, no Section 16(b) "group" existed among the QVT Defendants such that they were prohibited from engaging in the purchase and sale of securities inside the six-month "short swing" period.

Section 16 of the Exchange Act, with respect to any company whose securities are registered on a national securities exchange, imposes certain obligations and restrictions on the company's officers, directors, and "[e]very person who is directly or indirectly the

beneficial owner of more than 10 percent of any class of any equity security (other than an exempted security)." 15 U.S.C. § 78p(b)(a)(1).  Congress defined directors, officers, and beneficial owners as those presumed to have access to insider information, and enacted section 16(b) of the Exchange Act to prohibit certain trades by such insiders. *Roth v. Jennings*, 489 F.3 499, 506 (2d Cir. 2007) (citing *Foremost-McKesson, Inc. v. Provident Securities Co.*, 423 U.S. 232, 243 (1976)).  Section 16(b) provides, in relevant part:

> "(b) Profits from purchase and sale of security within six months.  For the purpose of preventing the unfair use of information which may have been obtained by such beneficial owner, director, or officer by reason of his relationship to the issuer, any profit realized by him from any purchase and sale, or sale and purchase, of any equity security of such issuer (other than an exempted security)…within any period of less than six months, …shall insure to and be recoverable by the issuer, irrespective of any intention on the part of such beneficial owner, director or officer..."

15 U.S.C. § 78(b)(p).  Profits that result from purchase-and-sale, or sale-and-repurchase, transactions within a period of less than six months are commonly known as "short-swing" transactions.  *See Roth*, 489 F.3d at 507; SEC Rule 16a-1(a)(3), 17 C.F.R. § 240.16a-1(a)(3).  Section 16(b) imposes strict liability for any short-swing insider transaction.  15 U.S.C. § 78(b)(p); *Foremost-McKesson*, 423 U.S. at 251.  Congress's purpose in prohibiting such transactions was to "tak[e] the profits out of a class of transactions in which the possibility of abuse was believed to be intolerably great." *Reliance Electric Co. v. Emerson Electric Co.*, 404 U.S. 418, 422 (1972).

The Exchange Act recognizes that "the abuses that it targets may be accomplished by persons acting not individually but in combination with others," *Roth*, 489 F.3d at 507; therefore, a "beneficial owner" under the Exchange Act need not be an individual, but may be a "group" of the sort that Plaintiff alleges existed among the QVT

7

Defendants. With respect to the definition of a "beneficial owner" under section 16, SEC Rule 16a-1(a)(1) provides that "[s]olely for purposes of determining whether a person is a beneficial owner of more than ten percent of any class of equity securities," the term "beneficial owner" means, with exceptions not pertinent here, "any person who is deemed a beneficial owner pursuant to section 13(d) of the Act and the rules thereunder." 17 C.F.R. § 240.16a-1(a)(1).

Section 13(d) provides, in turn, that "when two or more persons agree to act together for the purpose of acquiring, holding, voting, or disposing of equity securities of an issuer, such syndicate or group shall be deemed a 'person' for the purposes of this subsection." 15 U.S.C. § 78m(d)(3). The SEC promulgated a rule under this statute, which provides, in relevant part, "[W]hen two or more persons agree to act together for the purpose of acquiring, holding, voting or disposing of equity securities of an issuer, the group formed thereby shall be deemed to have acquired beneficial ownership." SEC Rule 13d-5(b)(1), 17 C.F.R. § 240.13d-5(b)(1). Thus, if two or more entities agree to act together for any of the listed purposes, a "group" is formed. *See Roth*, 489 F.3d 499 at 508.

Thus, "the touchstone of a group within the meaning of Section 13(d) is that the members combined in furtherance of a common objective." *Wellman v. Dickinson*, 682 F.2d 355, 363 (2d Cir. 1982), *cert. denied*, 460 U.S. 1069 (1983). The Second Circuit interprets the "common objective" requirement broadly. The plain language of the statute does not require a group to be committed to any "specific set of terms," but rather, "demands only an agreement for the purpose of acquiring, holding, or disposing of securities." *Morales v. Freund*, 163 F.3d 763, 767 n.5 (2d Cir. 1999); *Morales v. Quintel*

*Entertainment, Inc.,* 249 F.3d 114, 124-25 (2d Cir. 2001). Evidence that group members "might not always made identical investment decisions" does "not preclude existence of agreement." *Id.* at 127; *see also Roth*, 489 F.3d 499 at 508.

The QVT Defendants maintain that each of the Advised Funds has separate investors, and there never any agreement among the QVT entities to act together to purchase and sell securities. Thus, according to the QVT Defendants, there is no statutory group that can be held liable for short sales. QVT contends on this basis that the Complaint must be dismissed, because no individual QVT entity ever owned more than 10% of Medivation's common stock, and therefore, Plaintiff's section 16 claim must fail.

However, the schedules that QVT filed with the SEC state explicitly that "QVT Financial has the power to direct the vote and disposition of the Common Stock held by QVT Overseas Ltd. [and] each of the [U.S.] Funds." *See* Fruchter Decl., Ex. A at 2; Ex. B at 4; Ex. C at 4. A bare allegation of common control is, standing alone, insufficient to give rise to an inference of the agreement that is necessary to an existence of a Section 13(d) group. *Neubauer v. Eva-Health USA, Inc.*, 158 F.R.D. 281, 284-85 (S.D.N.Y. 1994). Further, here the pleading infers that the entities are a Section 13(d) group with respect to the dealings in the securities of the third entity. *Strauss v. American Holdings, Inc.*, 902 F.Supp. 475, 480 (S.D.N.Y. 1995). In *Strauss*, the Complaint alleged that the President and CEO of a corporation was also the sole general partner of another entity, a limited partnership. Judge Kaplan ruled that these allegations permitted the inference that an "agreement" was formed to act together with respect to the securities of a third party. *Id.* at 480. Furthermore, inconsistencies in the trading patterns between the corporation and the limited partnership did not change the *Strauss* court's conclusion that

the allegations in the complaint were sufficient to withstand a motion to dismiss. *Id.* at 481.

Here, we face a similar situation. The trading patterns of the U.S. Funds and the Cayman Islands-based QVT Overseas Ltd. are not identical, but keeping in mind that the thrust of Section 16(b) is to prevent those with substantial share holdings—*i.e.*, greater than ten percent—who may have access to inside information from profiting from their insider status, *Foremost-McKesson, Inc.*, 423 U.S. at 243, and that this is a strict liability provision, the complaint contains allegations sufficient to permit this court to "draw the reasonable inference," *see Iqbal*, 129 S.Ct. at 1949, that the QVT Defendants were beneficial owners of more than ten percent of Medivation's common stock, and engaged in short-swing trading in that stock in 2008 and 2009.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss the Complaint is DENIED. The parties are directed to proceed in accordance with the Pretrial Scheduling Order of May 10, 2010.

SO ORDERED.

New York, New York
October 15, 2010

_____
U.S.D.J.